IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN   DIVISION

UNITED STATES OF AMERICA

VS.                                                                          CR 05-PT-61-S

JEWELL C. "CHRIS" McNAIR
GRADY R. "ROLAND" PUGH
JOSEPH E. "EDDIE" YESSICK
ROLAND PUGH CONSTRUCTION, INC.
BOBBY J. RAST
DANIEL B. "DANNY" RAST,
RAST CONSTRUCTION, INC.
FLOYD W. "PAT" DOUGHERTY
F. W. DOUGHERTY ENGINEERING
& ASSOCIATES, INC.

      **Defendants**

**MEMORANDUM OPINION**

The court has before it a number of post-verdict motions filed by all the defendants with a litany of stated grounds. The court finds the following grounds to be worthy of further discussion. Most, if not all, of these grounds have been asserted by all defendants.

I.     The <u>Quid</u> <u>Pro</u> <u>Quo</u> Issue

The court has previously addressed this issue in a pre-trial memorandum opinion dated March 24, 2006, attached hereto, addressing various motions in limine. The court adheres to that opinion and hereby adopts it with regard to the post-verdict motions. Particularly noteworthy is the cited <u>Jennings</u> case. *Also see U. S. v. Paradies*, 98 F.3d 1266 1289 (11th Cir. 1996).

Here, there was strong circumstantial evidence of intent to influence or reward or to be

1

influenced or rewarded.   This includes:

   (1) The large amounts involved.

   (2) The attempts to conceal the nature of the payments.

   (3) As to defendant Chris McNair, the large cash deposits.  (See further discussion below).

   (4) The significant Rule 404(b) evidence related to contractors and other officials involved with the same overall project.

   (5) The interaction among the defendants.

There is another factor which refutes the defendants' quid pro quo arguments which was not directly discussed in this court's earlier opinion. Section 666 provides for separate offenses with regard to "bribers" and "bribees."  The separate issues are (1) whether an alleged "briber" intended to influence or reward and/or (2) whether an alleged 'bribee" intended to be influenced or rewarded.  The crux of each issue is the intent and corruptness of either the giver or receiver. Under the statute, it is not necessary that the alleged "briber" and "bribee" both have a corrupt intent.  One could be found guilty and the other not.  That this is true further undermines the argument that there must be a specific quid pro quo.  As stated in *Sabri v. United States*, 541 U.S. 600, 606 (2004), "And officials are not any the less threatening to the objects behind federal spending just because they may accept [or give] general retainers."[1]

An alleged briber may have the intent necessary to support a charge of giving with the intent to influence or reward and the alleged bribee may or may not have the intent to be so influenced or

---

[1] *Also see U. S. v. Massey,* 89 F.3d 1433, 1439 (11th Cir. 1996).

rewarded.² Section 666 does not require concerted action. It does not require a joint corrupt intent to give *and* a corrupt intent to receive. The offenses are separately stated and proscribed.

II.     Cash Deposits By Defendant McNair

This evidence was admitted as evidence of McNair's corrupt intent. The jury was instructed that the evidence was not applicable to any other defendant on trial.³

According to *U.S. v. Lattimore*, 902 F.2d 902 (11th Cir. 1990), "[w]here the charged crime involves pecuniary gain and the Government presents other evidence of the defendant's guilt, evidence of the sudden acquisition of money by the defendant or his or her spouse is admissible, even if the government does not trace the source of the new wealth." *Id*. at 903 (citing numerous cases). In *U.S. v. Manning*, 440 F.2d 1105 (5th Cir. 1971), a defendant was convicted of bank robbery and appealed, claiming that the unexplained wealth had not been traced back to the bank robbery and there was no evidence that he had been impecunious at the time of the alleged crime.⁴ The Fifth Circuit Court of Appeals affirmed the conviction, stating: "Where there is other evidence of the guilt of the accused and the crime is of such a nature that the acquisition of money may be regarded as a natural or ordinary result of its perpetration, evidence is admissible of the sudden acquisition of money by the defendant...at or subsequent to the time the offense was committed, although the source of the money is not definitely traced or identified by the

---

²It should be noted that the terms "bribe," "bribery," etc. are not used in the body of § 666. The provisions relate to intent to influence or reward or to be influenced or rewarded. The term "bribery" is in the title only. *U. S. v. Diamond Growers of Calif.*, 526 U.S. 398 (1999) is clearly distinguishable. The defendant in that case was charged with violating 18 U.S.C. § 201(d)(1)(A) which provides that it is an offense to give "for or because of any official *act* performed or to be performed ..." (Emphasis added).

³The defendants have suggested that the Government was derelict in not offering proof that much of these amounts came from defendant(s) not on trial. The defendants had access to the same evidence.

⁴Here, there was evidence that McNair was having difficulty paying for his building.

3

prosecution." *Id*. at 1110. This concept has been articulated by the Fifth Circuit as "subsequent unexplained wealth." *See U.S. v. White*, 589 F.2d 1283, 1286 (5th Cir. 1979).

In *Williams v. U.S.*, 168 U.S. 382 (1897), the Supreme Court held that evidence was inadmissible in a trial for extortion in taking specified sums of money where the amounts did not correspond with the amounts shown to have been in the possession of the defendant and there was no evidence of a connection between them. The defendant had been accused of embezzling $100 once and $85 another time, yet there was no evidence of these amounts being deposited in the account in question. According to 123 A.L.R. 119, p. 20, "[t]his case is often cited as opposed to the rule that evidence of the sudden acquisition of money, the source of which is not traced, is admissible in a criminal case...." However, *Williams* has been distinguished in the pre-split Fifth Circuit twice, basically limiting *Williams* to its facts. *See Self v. U.S.*, 249 F.2d 32 (5th Cir. 1957); *U.S. v. Manning*, 440 F.2d 1105 (5th Cir. 1971).

In *U.S. v. Jackskion*, 102 F.2d 683 (2d Cir. 1939), the Second Circuit Court of Appeals gave an analysis of *Williams*. In *Jackskion*, evidence of increased amounts in the defendant's bank account, along with direct evidence of operation of illegal stills, was allowed in by the trial court. According to the *Jackskion* court:

> Jackskion urges that it was reversible error to admit evidence of his bank account, citing *Williams v. United States*, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509. It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source of the money is not traced. *Commonwealth v. Mulrey*, 170 Mass. 103, 49 N.E. 91; *Commonwealth v. Coyne*, 228 Mass. 269, 117 N.E. 337, 3 A.L.R. 1209; *People v. Connolly*, 253 N.Y. 330, 171 N.E. 393; *Campanelli v. United States*, 9 Cir., 13 F.2d 750; *O'Shea v. United States*, 6 Cir., 93 F.2d 169; Wigmore on Evidence, section 154; Wharton's Criminal Evidence, section 194. As pointed out by Mr. Justice Holmes in *Commonwealth v. Mulrey*, *supra*, such evidence may, when taken with proof of other facts, have a

> logical tendency to prove criminal misconduct. The weight will of course vary, depending among other things on whether the money was kept secretively by the accused. *See People v. Connolly*, *supra*; *O'Shea v. United States*, *supra*. In *Williams v. United States*, supra, relied on by the appellant, the defendant was on trial for having extorted specific sums, $100 in one case and $85 in the other, from Chinese under color of his office as Chinese inspector. Evidence that he had deposited between $4,000 and $5,000 in his bank account in the year when the offenses were said to have been committed was held inadmissible. The discussion in the *Williams* case, however, shows that no general rule of evidence was laid down. The case is to be taken, we think, as no more than a ruling on the particular facts there presented. It was so treated by the Sixth Circuit in *O'Shea v. United States*; *supra*. We are therefore of opinion that the District Court was right in permitting the prosecution to show that Jackskion's bank balance, normally at an amount between $500 and $1,000, had in a year climbed to more than $8,000.

*U.S. v. Jackskion*, 102 F.2d 683, 684 (2d Cir. 1939).

In *State v. Nevius*, 71 N.E. 2d 258 (Oh. 1947), a prosecuting attorney was charged with accepting a bribe to allow others to operate a gambling establishment. There was evidence that the defendant had expended $12,000 more than his salary over the course of 3 ½ years, and that he had been to the establishment a few times, each time remaining only for a short period. According to the Ohio Supreme Court:

> The following observations of Circuit Judge Patterson in the course of his opinion in *United States v. Jackskion*, 102 F.2d 683, 684, 123 A.L.R. 116, are apposite here:
>
>> 'It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source of the money is not traced [citing cases]. As pointed out by Mr. Justice Holmes in *Commonwealth v. Mulrey*, *supra*, [170 Mass. 103, 49 N.E. 91], such evidence may, when taken with proof of other facts, have a logical tendency to prove criminal misconduct.' *Compare People v. Connolly*, 253 N.Y. 330, 171 N.E. 393.
>
>> The Court of Appeals correctly stated the question as follows [66 N.E.2d 243, 248]: 'The legal question presented is whether the

5

>jury, having found that the total income was larger than from known sources, could draw the conclusion that the excess represented money paid appellant [Nevius] by Parisi or Schear to influence appellant in the discharge of his duty as prosecuting attorney.'
>
>The Court of Appeals came to the conclusion that the direct and circumstantial evidence was insufficient to sustain the verdict without piling inference upon inference. With such conclusion we cannot agree. We are of the opinion that the proven facts and circumstances in this case form a sufficient basis for an inference of guilt beyond a reasonable doubt. It was not necessary for the jury to base an inference upon an inference. The inference of guilt is the only probable or natural explanation of the proven facts and circumstances. As stated by Judge Wilkin in *Ensel v. Lumber Ins. Co. of New York*, 88 Ohio St. 269, 282, 102 N.E. 955, 959,'An 'inference' is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'
>
>Section 13444-1, General Code, provides: 'The rules of evidence in civil causes insofar as the same are applicable, shall govern in all criminal causes except as otherwise provided in this code.'
>
>In the case of *Summons v. State*, 5 Ohio St. 325, at page 343, Chief Justice Bartley said: 'The general rules of evidence, the sole object of which is the ascertainment of truth, are usually the same both in civil and in criminal cases.'
>
>In 17 Ohio Jurisprudence 181, Section 139, it is said: 'There can be no question at the present day as to the competency of circumstantial evidence. Circumstantial evidence is frequently resorted to in criminal cases, for in many instances the fact of the crime can only be proved by such evidence.' Bribery is one of the crimes where it is frequently, if not usually, necessary to rely on circumstantial evidence.

*State v. Nevius*, 71 N.E. 2d 258, 265 (Oh. 1947).

McNair may argue that he had no obligation to testify and explain the source(s) of the cash cache. In any event, however, his daughter testified and was unable to explain the source(s) even though she was active in McNair's business. She did not believe that it came from his

business.

In a myriad of drug cases, evidence of cash has been admitted without further evidence of specific sources. The evidence here was certainly admissible to prove McNair's intent.

III.   Conspiracy

There was evidence of an almost club-like atmosphere among the various contractors and McNair and each other. There was evidence of cooperation among the defendant contractors with regard to work projects on behalf of McNair. There was evidence of contractors undertaking to enlist other contractors and aiding each other in this regard. The Dougherty supervisor of the McNair Photo Studio project dealt with other defendants regarding the project. There was evidence of "interdependence" and coordination among the defendants. Either McNair or Dougherty could be considered the "key man." *See U. S. v. Taylor*, 17 F.3d 333 (11th Cir. 1994) and *U. S. v. Champion*, 813 F.2d 1154 (11th Cir. 1987). There can be a single conspiracy with multiple objects (i.e. to give and/or receive.). *See U. S. v. Anderson*, 872 F.2d 1508 (11th Cir. 1989). Whether the evidence supports finding a single conspiracy is a question of fact for the jury. *See U. S. v. Tokars*, 95 F.3d 1520 (11th Cir. 1996); *U. S. v. McKinley*, 995 F.2d 1020 (11th Cir. 1993) (charge of several offenses, proof of any one); and *Griffin v. U. S.*, 502 U.S. 46 (1991) (more than one object charged). The overall evidence of a conspiracy was strong.

Defendants rely upon *U. S. v. Sager*, 49 F.2d 725 (2nd Cir. 1931). This court does not agree with the following language in *Sager* as applied to Section 666:

> There may not be a conspiracy founded on a crime to commit bribery between persons, one charged with the intended taking and several charged with giving the same bribe. Concert is always necessary to an agreement to take and to give a bribe;

7

it is always necessary to an intended taking and an intended giving; and it is necessary to the receipt of a bribe and the giving of a bribe.

The defendants have argued that there cannot be a conspiracy between bribers and bribees. Be that as it may, there can certainly be a conspiracy among bribers.

Furthermore, it is well established that a person may be liable for a conspiracy even though he was incapable of committing the substantive offense(s).

The defendants have relied upon "Wharton's Rule" for the proposition that if the offense necessarily involves two participants, the crime charged cannot be prosecuted as a conspiracy. The usual example given is adultery. See *Iannelli v. U. S.*, 420 U. S. 770 (1975). This case is clearly distinguishable from cases covered by Wharton's Rule. As discussed above under I, the offense of receiving with the intent to be influenced or rewarded is a separate offense from giving to influence or reward. While the two participants might well be charged in the same substantive count of adultery, it would likely be inappropriate to charge a briber and bribee under § 666 in the same substantive count. In each instance, the crux is the intent of (1) the receiver and/or (2) the giver. One could be guilty and the other not. The required intents are different. The following discussion in *U. S. v. Brenson*, 104 F.3d 1267, 1283 (11 th Cir. 1997) is pertinent:

> The Wharton Rule states as follows: "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission. *Iannelli v. United States*, 420 U. S. 770, 773, n. 5, 95 S.Ct. 1284, 1288, n. 5, 43 L.Ed.2nd 616 (1974). The classic example of the crime of adultery was used by Brenson to demonstrate the applicability of the Wharton Rule. *Ianelli*, 420 U.S. 770, 784, n. 15, 95 S.Ct. 1284, 1293, n. 15, 43 L.Ed.2d 616 (1975). Brenson argues that the conspiracy conviction in this case violates the Wharton Rule based on the test set forth in *Iannelli*. The Supreme Court suggested that a court look at the elements of both the substantive offense and the conspiracy charge and if one requires proof of a fact that the other does not, then there is no violation of the Wharton Rule. 420

U.S. at 786, n. 17, 95 S.Ct. at 1294, n. 17.

As the government has pointed out, a person may violate Section 1503 without acting in concert with another or absent any assistance from another person, as when an individual, acting alone destroys evidence relevant to a judicial proceeding. *United States v. Howard*, 569 F.2d at 1334. Alternatively, even when dealing with the disclosure of grand jury information, an individual could violate § 1503 singularly by simply providing such information to another individual when such disclosure would have the probable effect of impeding the due administration of justice, without any agreement with the second person. In other words, there is no requirement that the government prove an "agreement" in order to properly convict an individual under § 1503. Thus, the prosecution and conviction of Brenson under § 1503 and for a conspiracy to violation § 1503 under § 371 does not violate the Wharton Rule.

One person could be a briber. One person could be a bribee. Neither crime requires that both agree to its commission.

Also see *Brenson* for a good general discussion of conspiracy charges and the proof required. Compare *Direct Sales Co. v. U. S.,* 319 U. S. 703 (1943) and *U. S. v. Frink*, 912 F.2d 1413 (11th Cir. 1990).

...The government may prove the existence of an agreement by circumstantial evidence through "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme."

*U.S. v. Obregon,* 893 F.2d 1307, 1311 (11th Cir. 1990) (quoting *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir. 1982)).

IV.    Sufficiency of Evidence

The following statements in *U. S. v. Ward,* 197 F.3d 1076, 1079 (11th Cir. 2000) govern this court's consideration of the various motions related to the sufficiency of the evidence.[5]

...In considering a motion for the entry of judgment of acquittal under Federal

---

[5] For standards regarding motions for new trial, *See U. S. v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). The court concludes that the verdicts were not contrary to the weight of the evidence.

Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. *See United States v. Sellers*, 871 F.2d 1019, 1020 (11th Cir. 1989). The district court must view the evidence in the light most favorable to the government. *See id.* (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. (680) (1942), *superceding by rule on other grounds, Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). The court must resolve any conflicts in the evidence in favor of the government, *see United States v. Taylor*, 972 F.2d 1247, 1250 (11th Cir. 1992), and must accept all reasonable inferences that tend to support the government's case. *See United States v. Burns*, 597 F.2d 939, 941 (5 th Cir. 1979). The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See Sellers*, 871 F.2d at 1021 (citing *United States v. O'Keefe*, 825 F.2d 314, 319 (11 th Cir. 1987). " 'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Sellers*, 871 F.2d at 1021 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). A jury is free to chose among reasonable constructions of the evidence. *See Sellers*, 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." *See id.* (*citing United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir. 1984)). (Footnote omitted)

Applying those standards, this court is satisfied that the evidence was sufficient to support the convictions.

V.   Instruction on Definition of "Corruptly."

The instruction that the court gave is the § 666 one used in the Eleventh Circuit Pattern Instructions for criminal cases. It is also the one given and approved in *United States v. Woodall*, (Unpublished) No. 05-13836 (11th Cir. March 21, 2006), a § 666 bribery case. *Also see United States v. Brenson*, *supra*, 104 F.3d at 1280-1281 and *United States v. Popkin*, 943 F.2d 1535, 1539-40 (11th Cir. 1991).

The Eleventh Circuit Pattern charge is, in effect, an expansion of the definition of "corruptly" approved in *U. S. V. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985). Neither that case

nor any other cited case requires a reference to any specific unlawful offense.  The essence is that there be "dishonesty."

VI.     General Jury Instructions

The defendants have argued that the court should have given the jury specific theory of the defense instructions with regard to friendship.  At the request of one or more defendants, the court added an instruction to the pattern charge, emphasizing that a mere gift is not sufficient.  The court merely declined to suggest that a friend cannot bribe a friend.[6]

The court, at defendant Roland Pugh's request, added a reference to the Pattern Aiding and Abetting charge regarding relatives and co-employees.

In general *see U. S. V. Williams*, 445 F.3d 1302, 1309-10 (11th Cir. 2006).

VII.    404 (b) Evidence

This case presented highly significant issues of intent and corruptness.   When the court addressed the pretrial motions in limine, it gave the defendants an opportunity to  disavow the intent issue.  None did.  All made intent the main issue.  The defendants' arguments with regard to quid pro quo further emphasize the government's need for 404(b) evidence.

> "The greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice."

*U.S. v. Brewer*, Slip Copy, No. 05-11451, 2005 WL 2298295, at *3 (11th Cir. Sep. 22, 2005) (*quoting U.S. v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995)).

> "The factors determining this analysis include "the strength of the government's case on the issue of intent, the *overall similarity* of the extrinsic and

---

[6]As indicated in *U.S. v. Paradies*, 98 F.3d 1266, 1287 (11th Cir. 1996), the court is not required to place "desired factual findings into the mouth of the court," or to argue or to merely emphasize "a certain phase of the evidence."

> charged offenses, the *amount of time separating the extrinsic and charged offenses* and *whether it appeared at the commencement of trial that the defendant would contest the issue of intent.*" United States v. Dorsey, 819 F.2d 1055, 1061 (11th Cir.1987), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). In this case, these factors favor admission of the challenged testimony. *The element of criminal intent was arguably the weakest link in the government's case, and the focus of the defense.*" (Emphasis added).

*U.S. v. Muscatell*, 42 F.3d 627, 631 (11th Cir. 1995). All emphasized factors apply here.

In *U.S. v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995), the Eleventh Circuit Court of Appeals stated in reference to the admissibility of extrinsic evidence, "[t]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice."

> "[It is required] that the probative value of the extrinsic act evidence not be substantially outweighed by any unfair prejudice caused by that evidence. In determining whether this part of the test is satisfied, a court should consider the differences between the charged and extrinsic offenses, their temporal remoteness, and the government's need for the evidence to prove intent."

*U.S. v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993).

The offenses were similar and temporally close. The 404(b) evidence was clearly appropriate to meet the government's requirement to prove intent. The defendants claimed that the repeated substantial gifts were out of admiration and friendship. Thus, intent was directly at issue.

VIII.   Post Resignation Evidence

While the court granted judgments of acquittal with regard to charges of gifts after McNair's resignation as a commissioner, the evidence with regard thereto was relevant. It showed a continuing relationship which, arguably, could have been beneficial to the defendants under their "friendship" arguments. The evidence was not remote to the pre-resignation conduct. While the court ruled that

McNair could not be bribed after he resigned, the evidence related to continuing to reward him.[7]

   This the 30th day of June, 2006.

_____
   **ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[7]The court's ruling granting judgments of acquittal may or may not have been correct. While it seems clear that the "receiving" provisions of § 666 require that the agent be in office, it is not so clear that the "giving" provisions so require. Someone who has been an agent could be rewarded. The words "being an agent" are not in the giving provision. They are in the receiving provision. Compare, however, 18 U.S.C. § 201(c)(1)(A) which specifically refers to a "former" public official.